UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

DEBORAH HAND,

        Plaintiff,

    - against -

NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND
DEVELOPMENT,

        Defendant.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-01076 (RRM)(JO)

ROSLYNN R. MAUSKOPF, United States District Judge:

       Plaintiff Deborah Hand, proceeding *pro se*, brings this action against defendant New

York City Department of Housing Preservation and Development ("HPD") alleging

discrimination, hostile work environment, and retaliation in violation of the Americans with

Disabilities Act, 42 U.S.C. § 12112, *et seq.* ("ADA") and Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Defendant moved for summary judgment

pursuant to Federal Rule of Civil Procedure 56, asserting that plaintiff's ADA claims are

unexhausted and now time-barred, and that plaintiff's Title VII claims are both meritless and in

part precluded by the parties' prior administrative action.  (Def.'s Mem. (Doc. No. 70) at 2.)

Plaintiff opposed defendant's motion, and also sought relief from her pre-termination

administrative decisions pursuant to Federal Rules of Civil Procedure 59 and 60.  (Pl.'s Rule 59

& 60 Mot. (Doc. No. 65); Pl.'s Am. Mem. L. (Doc. No. 66); Pl.'s Opp'n (Doc. No. 67).)  Shortly

after full briefing of this motion, plaintiff filed a "Rebuttal"  which the Court will also consider.

(Doc. Nos. 74, 75.)

       For the reasons stated below, defendant's motion for summary judgment is granted, and

plaintiff's request for relief from all pre-termination administrative decisions is denied.

1

# BACKGROUND[1]

The following incidents form the bases of plaintiff's claims. Although the parties dispute a number of details concerning these incidents, none of disputed details are material and there is no genuine issue of material fact in dispute.

Between September of 2004 and October of 2010, plaintiff worked for defendant HPD as a Level IV Clerical Associate. (Pl.'s Dep., Ex. C (Doc. No. 72-3) at 41:7, 41:18, 105:21–22.) Plaintiff was terminated in 2010 following an administrative pre-termination hearing at the Office of Administrative Trials and Hearings ("OATH"). (*See* OATH Decision, Ex. D (Doc. No. 72-4) at 35.) An OATH administrative law judge ("ALJ") found plaintiff guilty of misconduct and incompetence, and found termination appropriate. (OATH Decision at 30, 35.) Plaintiff appealed, and in April 2011, the New York City Civil Service Commission affirmed the termination decision. (See Civ. Serv. Comm. § 76 Decision, Ex. I (Doc. No. 72-9) at 1.)

The following incidents, listed in chronological order,[2] occurred during plaintiff's employment with defendant and form the bases of plaintiff's ADA and Title VII claims:

- During or prior to 2006:

    - defendant failed to make plaintiff a supervisor (EEO Rec., Ex. K (Doc. No. 72-11) at 1);

---

[1] The facts recited herein are taken principally from defendant's Local Rule 56.1 statement (Doc. No. 71) and the exhibits annexed to defendant's memorandum in support of its motion for summary judgment (Doc. No. 70) as well as from plaintiff's memorandum of law in opposition of summary judgment (Doc. No. 66), her opposition to defendant's 56.1 statement (Doc. No. 67), the jointly filed hard copy exhibits (Doc. No. 68), and her narrative statement (Doc. No. 16). *See Payne v. New York City Police Dep't*, 863 F.Supp.2d 169, 171 n.1 (E.D.N.Y. 2012) (Mauskopf, J.) (explaining that plaintiff's failure to comply with Local Rule 56.1 ordinarily "result[s] in the material facts in defendant's statement being deemed admitted for the purposes of deciding the pending summary judgment motion," however, district courts have "'broad discretion to determine whether to overlook a party's failure to comply with local court rules'" (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). The Court also exercises its discretion to consider plaintiff's rebuttal to defendant's reply. (Doc. No. 75.) Pursuant to Federal Rule of Civil Procedure 56(e)(2), all undisputed facts from defendant's Rule 56.1 statement are deemed admitted and all unsupported disputes of fact are considered undisputed for the purpose of defendant's summary judgment motion. *See* Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[2] Specific dates are referenced only for incidents where the parties submitted documents evidencing the timing of events.

- a coworker made allegedly racist comments about plaintiff's "dreg-locked" hair (*Id.*);

- a coworker offered plaintiff an allegedly racist choice of a white or brown stuffed animal for her desk (*Id.*);

- in April, defendant denied plaintiff's request for time off for religious worship (Application for Leave (ASP-2) (Doc. No. 68) at Ex. C);

- in June, defendant brought disciplinary charges against plaintiff for insubordination, "conduct prejudicial to good order and discipline," and absences from work without leave ("AWOL"), (Statement of Charges, Ex. F (Doc. No. 72-6) at 1–3);

- in July, defendant suspended plaintiff without pay for the above charges (Lewis Conf. Rec., Ex. G (Doc. No. 72-7) at 1–3).

- In 2008:

  - defendant transferred plaintiff to 100 Gold Street and again, in June, to 210 Joralemon Street (E-mail from Joseph Courtien to Raymond Powers, et al. (June 10, 2008 at 17:24 EST) (Doc. No. 68) at Ex. A; Dept. Mem. June 17, 2008 (Doc. No. 68) at Ex. A);[3]

  - in March, plaintiff discovered a computer error and alleges that the discovery was credited to a Hispanic coworker (E-mail from Deborah Hand to Vito Musaciuolo (April 3, 2008, 10:39 EST) (Doc. No. 68) at Ex. C));

  - defendant gave plaintiff allegedly subpar work assignments (Am. SDHR Compl. (Doc. No. 1) at 12 (ECF Pagination); Pl.'s Opp'n at 5).

- In 2009:

  - in February, plaintiff fought with a coworker over an open window, during the incident plaintiff claimed her coworker punched her in the back, and the coworker claimed plaintiff shoved her (Hand Ltr dated Mar. 2, 2009 (Doc. No. 68) at Ex. F);

  - in March, defendant suspended plaintiff without pay for the above incident (E-mail from Jessica Arizmendi to Eardine Scarsboro, et al. (March 10, 2009, 16:15 EST) (Doc. No. 68) at Ex. F);

---

[3] Plaintiff filed a complaint with HPD's Equal Employment Opportunity ("EEO") alleging that her transfer to 210 Joralemon St. was in retaliation for 2006 EEO activity. (*See* Internal EEO Compl. *Hand v. Mustaciulo* (Doc. No. 68) at Ex. H.)

- o  in March, plaintiff was transferred, for the third time during her tenure with HPD, to 701 Euclid Avenue (Dept. Mem. Mar. 13, 2009 (Doc. No. 68) at Ex. I);

- o  plaintiff alleges that one of defendant's employees "would often come into [her] office . . . [and] pull up a chair directly beside [her]" and, in one instance in April 2009, "reached out and felt[] [her] breast" (Pl.'s Narrative Statement (Doc. No. 16) at 2);[4] plaintiff subsequently reported this particular incident to her union representative (Hand Ltr to Dist. Council 37 dated Aug. 4, 2010 (Doc. No. 68) at Ex. G);

- o  between April 16–17, defendant marked plaintiff AWOL despite plaintiff's alleged notification that she was on medical leave, (Hand Ltr to Dist. Council 37 dated July 30, 2009 (Doc. No. 68) at Ex. H)

- o  defendant brought disciplinary charges against plaintiff for not following proper procedures at work, which ultimately resulted in a pre-termination hearing in 2010 (Disciplinary Memo, Ex. L (Doc. No. 72-12); OATH Decision at 1);

- o  in November, defendant published plaintiff's picture as part of an "About HPD" pamphlet without her permission (Hand Dep. (Doc. No. 72-3) at 101:19–20; Compl., Ex. 1 (Doc. No. 1-2) at 1).

- In 2010:

  - o  in April, defendant charged plaintiff with "[e]ngaging in conduct prejudicial to good order and discipline, and actions that are unprofessional and disruptive, failure to carry out assignments, and failure to comply with orders and directives issued by the Department, in violation of the Department's Code of Conduct Rules 1, 8, 9, and 10" and "[f]ailure to follow proper procedures in handling Tenant phone calls and Complaints and making appointments in violation of the Department's Code of Conduct Rule 8" (Statement of Charges dated Apr. 15, 2010 (Doc. No. 68) at Ex. D);

  - o  in September, a pre-termination hearing was held before an OATH ALJ, who found that plaintiff was guilty of misconduct, insubordination, and incompetence (OATH Decision at 33); based on the recommendation of the OATH ALJ, plaintiff was terminated in October (Termination Ltr, Ex. H (Doc. No. 72-8) at 1).

---

[4] Defendant disputes the details concerning this incident by pointing out discrepancies in "plaintiff's story" and noting that the OATH ALJ found that plaintiff's testimony concerning this incident was "spurious and contrived" and that "the first time she ever claimed Deputy Perez brushed his arm across her chest was at this hearing." (Def.'s Mem. at 7; OATH Decision, Ex. D (Doc. No. 72-4) at 24.)

Plaintiff's race-based and retaliatory discrimination claims were filed with the SDHR on December 9, 2009, and amended on December 19, 2009.  (*See* SDHR Compl. & Am. SDHR Compl. (Doc. No. 1) at 8–13 (ECF Pagination).)[5]  On August 31, 2010, the SDHR dismissed plaintiff's complaint, finding no probable cause that defendant engaged in discriminatory behavior.  (SDHR Determination & Order, Ex. E (Doc. No. 72-5) at 1–3.)  The Equal Employment Opportunity Commission ("EEOC") affirmed the decision and sent plaintiff a Dismissal and Notice of Rights letter on December 7, 2010.  (EEOC Dismissal & Notice of Rights (Doc. No. 1) at 7.)  Plaintiff filed the instant action based on her SDHR complaint on March 4, 2011.  (Compl. (Doc. No. 1) at 1.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or reasonable inferences in favor of the non-moving party.  *Id.* at 255

---

[5] The Court notes that although plaintiff's original SDHR complaint alleged only retaliation and race discrimination (SDHR Compl. at 9 (ECF Pagination)), plaintiff, in her amended SDHR complaint, also checked off the box for sex discrimination, explaining that she was "sexually harassed in retaliation for [her] EEO complaint," and wrote in the box for domestic violence victim discrimination that she was "assaulted by a coworker in retaliation for [her] EEO complaint."  (Am. SDHR Compl. (Doc. No. 1) at 13 (ECF Pagination).)  Because plaintiff is not a domestic violence victim by virtue of an alleged physical assault by a coworker, does not allege discrimination based on her purported status as a domestic violence victim, and never raises this status in any of her papers, the Court will not address this status in its analysis below.

(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

In discrimination cases, the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. *Id.*

Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations omitted). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

Finally, the Court is mindful that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848

F.2d 342, 344 (2d Cir. 1988). Thus, a *pro se* party's papers opposing summary judgment are to be construed "liberally" and interpreted to "raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal citations omitted). This special solicitude does not, however, "relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal citations omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).

## DISCUSSION

For the reasons that follow, the Court finds that the pre-termination administrative decisions are unreviewable, plaintiff's ADA claims are unexhausted, several of plaintiff's Title VII claims are time-barred, and plaintiff has failed to establish a *prima facie* case for her remaining Title VII claims.

### I. Pre-Termination Administrative Decisions

Plaintiff brings a motion pursuant to Federal Rules of Civil Procedure 59 and 60 for relief from the "Finding, Conclusion, and Recommendation from the New York City Office of Administrative Trials and Hearings dated September 2, 2010, SDHR dated August 31, 2010, and the Civil Service Commissioner Decision, dated October 4, 2010." [6] (Pl.'s Rule 59 & 60 Mot. at 1.) Rules 59 and 60, by their very terms apply to judgments, orders, and trials in civil cases before federal district courts, and as such, are inapplicable to the administrative decisions plaintiff complains of. *See Teltronics Servs., Inc. v. Anaconda-Ericsson, Inc.*, 587 F. Supp. 724,

---

[6] Although the Court may not consider the SDHR determination pursuant to Federal Rules of Civil Procedure 59 and 60, the claims plaintiff raises in her SDHR complaints will be considered pursuant to Title VII below.

729 (E.D.N.Y. 1984), *abrogated on other grounds by Agency Holding Corp. v. Malley-Duff &*
*Assocs., Inc.*, 483 U.S. 143 (1987).

Nonetheless, reading plaintiff's papers very broadly, plaintiff makes conclusory
statements suggesting her due process rights were violated with respect to her pre-termination
hearings because: (1) OATH was biased against her, (2) the OATH hearing "constituted a
conflict of interest since OATH is a municipal tribunal reading over municipal agency's cases,"
(3) "OATH had a pattern of disparate treatment against [plaintiff]," (4) multiple witnesses in her
2010 OATH hearing fabricated testimony, (5) her counsel at OATH was negligent, and (6)
"fraud was used as a pretext for [her] termination." [7] (Pl.'s Am. Mem. L. at 1–3; Pl.'s Opp'n at
32.)

It is well-settled that "[w]hen [ ] a public employee is terminated, procedural due process
is satisfied if the government provides notice and a limited opportunity to be heard prior to
termination." *Locurto v. Safir*, 264 F.3d 154, 171–73 (2d Cir. 2001); *see also Otero v.*
*Bridgeport Housing Auth.,* 297 F.3d 142, 151 (2d Cir. 2002) ("The pretermination process 'need
not be elaborate' or approach the level of a 'full adversarial evidentiary hearing,' but due process
does require that before being terminated such an 'employee [be given] oral or written notice of
the charges against him, an explanation of the employer's evidence, and an opportunity to
present his side of the story.'" (citations omitted)). Indeed, where an adequate post-deprivation
procedure is available, "the requisite [pre-termination] hearing is a minimal one [that] does not
purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake

---

[7] In support of these allegations, plaintiff submitted the following evidence to the Court: (1) plaintiff's 1999 OATH
case *N.Y.C. Transit v. Hand*, (2) the 2002 OATH case *Housing Preservation and Development v. Sinclair*, OATH
Index No. 1700/02, (3) OATH City Wide Job Vacancy Notice, and (4) an "About OATH" article. (*See* Pl.'s Rule 59
& 60 Mot. (Doc. No. 65) at 3, 4; Exs. A-I (Doc. No. 68); *see also* Pl.'s Opp'n (Doc. No. 67) at 6–60.) In plaintiff's
amended memorandum of law, she alludes to charges brought against HPD employees in unrelated legal cases and
points out that OATH and HPD are both municipal agencies. (*See* Pl.'s Am. Mem. L. at 2, 16.) However, these
documents are irrelevant and unsupportive of plaintiff's allegations.

being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." *Locurto*, 264 F.3d at 173– (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985)). Notably, "a neutral adjudicator is [not] a necessary component of due process at a pre-termination hearing." *Locurto*, 264 F.3d 174.

There is no dispute that plaintiff was provided notice of the charges against her and opportunity to be heard prior to termination. Moreover, New York provides a dismissed municipal employee with the opportunity to bring an Article 78 proceeding to challenge "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." *See* N.Y. C.P.L.R. § 7803(4). The Second Circuit has found that "[a]n Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto*, 264 F.3d at 175. As such, plaintiff was provided adequate process, and to the extent that plaintiff raises claims that should have been brought pursuant to Article 78, the Court declines to exercise supplemental jurisdiction. *See Reed v. Medford Fire Dep't, Inc*., 806 F. Supp. 2d 594, 617 (E.D.N.Y. 2011) ("The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." (citation omitted)); *Morningside Supermarket Corp. v. N.Y. State Dep't of Health,* 432 F.Supp.2d 334, 346 (S.D.N.Y. 2006) ("[I]t is doubtful . . . that claims under Article 78 are even amenable to a federal district court's supplemental jurisdiction.").

Accordingly, the Court denies plaintiff's motion for relief pursuant to Federal Rules of Civil Procedure 59 and 60.[8]  *See Bishop v. Wood*, 426 U.S. 341, 349 (1976) ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." (internal citations omitted)).

## II.  Unexhausted and Time-Barred Claims

Under Title VII and the ADA, claims of employment discrimination must be filed with the EEOC within 180 days of the alleged discriminatory act or, if first reported to the SDHR, within 300 days of the alleged act.  *See* 42 U.S.C. § 2000e-5(c); 42 U.S.C. § 12117(a) (ADA provision incorporating by reference Title VII's provision, 42 U.S.C. § 2000e-5).  Failure to timely report claims of discrimination to the appropriate agency bars plaintiffs from asserting those claims in federal district courts.  *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (holding that a Title VII "claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter"); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (explaining EEOC procedures in the context of the ADA).

### A.  Disability Discrimination

Plaintiff's claims pursuant to the ADA are unexhausted.  Plaintiff failed to invoke the ADA in her SDHR complaint, which was jointly filed with the EEOC on December 9, 2009. Plaintiff additionally failed to invoke the ADA when she amended her SDHR complaint on December 19, 2009.  (*See* SDHR Compl. & Am. SDHR Compl. at 8–13 (ECF Pagination).)

---

[8] Though plaintiff cannot relitigate her administrative claims under the guise of a Title VII suit, administrative decisions, contrary to defendant's assertion, do not preclude Title VII actions.  *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("Congress did not intend [for] unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001) ("[U]nreviewed decisions of state administrative agencies will not bar a subsequent *de novo* trial under Title VII in federal court.").  Thus, where pertinent, plaintiff's claims will be considered below in the Court's Title VII analysis.

Because plaintiff never brought claims pursuant to the ADA to the EEOC, they cannot be brought to federal court.[9] *See McInerney*, 505 F.3d at 138 (explaining that employment discrimination claims pursuant to Title I of the ADA are subject to the administrative exhaustion requirements found in Title VII). Further, even if plaintiff were to file employment discrimination claims pursuant to the ADA with the EEOC today, because she was terminated nearly three years ago, her claims would be barred by the 180 day limitations period. *See* 42 U.S.C. § 12117(a).

### B.  Race and Sex Discrimination

Several of plaintiff's discrete claims of discrimination brought pursuant to Title VII are time-barred. Because plaintiff filed her race and sex based discrimination claims with the SDHR, plaintiff had 300 days to bring these discrimination claims to the EEOC. *See* 42 U.S.C. § 2000e-5(c). Plaintiff's SDHR complaint was jointly filed with the EEOC on December 9, 2009. (*See* SDHR Compl. & Am. SDHR Compl. at 8–13 (ECF Pagination).) Thus, plaintiff's claims pertaining to discrete discriminatory acts occurring before February 12, 2009, 300 days prior to plaintiff's EEOC filing, are time-barred. [10]

As such, the following discrete claims are time-barred:  (1) defendant's failure to make plaintiff a supervisor at some point prior to or during 2006, (2) a coworker's comment about plaintiff's "dreg-locked" hair in 2006, (3) a coworker's offer of a white or brown stuffed animal at some point prior to or during 2006, (4) disciplinary actions brought against plaintiff in 2006,

---

[9] Generally, federal courts do not have jurisdiction over employment discrimination claims that have not been filed with the EEOC. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). However, exceptions may be made for claims "reasonably related" to those brought to the EEOC. *Id.* Plaintiff's claims of disability discrimination, based on her heart condition (*see* Pl.'s Am. Mem. L. at 22), are not reasonably related to her claims of race or sex discrimination and, thus, do not fall into this exception. *See Malachi v. Postgraduate Ctr. for Mental Health*, 10-cv-3527, 2013 WL 782614, at *3 (E.D.N.Y. Mar. 1, 2013) (Mauskopf, J.) (finding that plaintiff's age discrimination and disability discrimination claims were not "reasonably related" to his Title VII race discrimination claims brought to the EEOC).

[10] Plaintiff does not argue, nor does the Court find any basis for, the application of the continuing violation or equitable tolling doctrines to these claims.

(5) plaintiff's suspension without pay in 2006, (6) plaintiff's denial of time off for religious worship in 2006, (7) plaintiff's transfer to 100 Gold Street at some point prior to June of 2008, (8) plaintiff's transfer to 210 Joralemon Street in June of 2008, (9) subpar work assignments at 210 Joralemon Street, and (10) plaintiff's computer error discovery in 2008. (*See* Pl.'s Am. Mem. L. at 4–6; Pl.'s Opp'n at 12–14, 77–79.)

### III.    Remaining Title VII Claims

Plaintiff's remaining claims relate to the following incidents: (1) a fight with a coworker over an open window, during which plaintiff claims she was punched in the back, in February of 2009 (Pl.'s Narrative Statement at 3–4) and resulting suspension without pay (E-mail from Jessica Arizmendi to Eardine Scarsboro, et al. (March 10, 2009, 16:15 EST)); (2) an incident where one of defendant's employees "reached out and felt[] [her] breast" and would "often . . . pull up a chair directly beside" plaintiff in 2009 (Pl.'s Narrative Statement at 2; Hand Ltr to Dist. Council 37 dated Aug. 4, 2010); (3) transfer to 701 Euclid Avenue in March of 2009 (Dept. Mem. dated Mar. 13, 2009 at 1); (4) AWOL designation while on medical leave between April 16–17, 2009 (Hand Ltr to Dist. Council 37 dated July 30, 2009); (5) defendant's use of her likeness in an "About HPD" pamphlet in November of 2009 (Pl.'s Dep. at 101:19–20); and (6) her termination in October of 2010 (Termination Ltr at 1). Plaintiff alleges that these individual incidents constitute race and sex discrimination in violation of Title VII, and collectively constitute a hostile work environment. (Pl.'s Am. Mem. L. at 3.) Plaintiff further claims that the above incidents were acts of retaliation for her EEO activity in 2008 and SDHR complaint in 2009. (Pl.'s Am. Mem. L at 6–7.) For the reasons discussed below, plaintiff's discrimination, hostile work environment, and retaliation claims all fail.

**A.  Race and Sex Discrimination**

In order to establish a *prima facie* case of race or sex discrimination pursuant to Title VII, plaintiff must establish that she:  (1) is a member of a protected class; (2) was qualified for the position she held; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination.  *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Under the *McDonnell-Douglas* burden-shifting framework, once a plaintiff has established a *prima facie* case of race or sex discrimination pursuant to Title VII, the burden shifts to the defendant to rebut the presumption of discrimination by "offer[ing] a legitimate, non-discriminatory rationale for its actions."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  If the defendant carries this burden, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (citation omitted).

Plaintiff's Title VII race and sex discrimination claims fail because she cannot establish the fourth element of her *prima facie* case.  "It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see* 42 U.S.C. § 2000e-2.  Assuming plaintiff has established that she is a member of a protected class, that she was qualified for the position she held, and that she suffered adverse employment actions, she still cannot establish that the adverse employment actions occurred under circumstances that give rise to an inference of discrimination.  There is no evidence supporting a connection between the incidents plaintiff alleges and plaintiff's race or sex.  Nor do the circumstances surrounding these incidents give rise to an inference of discrimination.  Indeed, plaintiff's own statements suggest that these incidents were not based on her race or sex.  (*See* Pl.'s Am. Mem. L. at 8, 14, 15 (stating that  the fight with a female coworker occurred "when [plaintiff] attempted to close the

window" because she "could no longer sit in a cold office"; that "Defendant fabricated charges against [plaintiff] and backdated them to reflect that [her] sexual harassment complaint was a pretext for the pending charges"; and that "[i]n retaliation for [plaintiff's] sexual assault and hostile work environment complaint defendant so[ugh]t [plaintiff's] termination").)  At best, plaintiff merely makes broad, unsupported allegations that these incidents "suggest[] a level of hatred due to [her] race."  (Pl.'s Am. Mem. L. at 18; *see also* Pl.'s Narrative Statement at 1 ("HPD has intentional[y] engaged in discrimination against me and has done so with malice and reckless indifference.").)  This is insufficient to withstand a motion for summary judgment.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.").  Plaintiff's conclusory and unexplained assertions do not raise any issue of material dispute and no reasonable trier of fact could conclude that plaintiff was discriminated against on the basis of her race or sex.  *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation").  Thus, plaintiff has failed to establish a *prima facie* case of race or sex discrimination and the Court need not consider the balance of the *McDonnell-Douglas* burden-shifting.[11]

### B. Hostile Work Environment

Plaintiff also alleges these incidents collectively constitute a hostile work environment in violation of Title VII.  (Pl.'s Am. Mem. L. at 12–14.)  A hostile work environment claim

---

[11] Additionally, because the decision to terminate plaintiff "follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised."  *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002).  Plaintiff's conclusory statements that the tribunal was biased or conflicted because it "is a municipal tribunal reading over municipal agency's cases" are wholly insufficient.  (Pl.'s Am. Mem. L. at 1–3; Pl.'s Opp'n at 32.)

pursuant to Title VII, requires a showing that based on the totality of the circumstances, (1) plaintiff's "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal citations omitted). Like individual claims of discrimination, plaintiff must establish that the alleged mistreatment at work occurred *because of* her race or sex. *Brown*, 257 F.3d at 252.

To constitute a hostile work environment, the workplace must be both objectively and subjectively hostile, in that a reasonable person would find the environment abusive and the abuse actually altered the conditions of plaintiff's work. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). In analyzing hostile work environment claims, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2nd Cir. 1997)). However, a single act may be sufficient "if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.*

Plaintiff's hostile work environment claim is based on the allegations that (1) plaintiff was punched in the back when she fought with her coworker over an open window and subsequently suspended plaintiff without pay in 2009, (2) one of defendant's employees felt plaintiff's breast and often pulled up a chair directly beside plaintiff, (3) defendant transferred plaintiff to 701 Euclid Avenue in March of 2009, (4) defendant incorrectly marked plaintiff

AWOL while she was on medical leave between April 16–17, 2009, and (5) defendant used plaintiff's likenss in an "About HPD" pamphlet without her permission in November of 2009.[12] (*See* Pl.'s Am. Mem. L. at 4–5, 12–14.)  Plaintiff's failure to establish that these allegations occurred because of her race or sex is fatal to her hostile work environment claim.  As discussed above, and given plaintiff's own explanations for these incidents, no reasonable trier of fact could conclude that the alleged incidents occurred in circumstances that give rise to an inference of discrimination based on plaintiff's race or sex.

Further, even if plaintiff could establish that the alleged incidents were discriminatory, these incidents are insufficient to establish that her work environment was so "permeated with discriminatory intimidation, ridicule, and insult" so as to alter the conditions of her employment. *See Harris*, 510 U.S. at 21; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (stating that Title VII is not a "general civility code" which prohibits "all verbal or physical harassment in the workplace").  Plaintiff argues that, standing alone, the incident where she was allegedly punched in the back by her coworker during a fight over an open window and the incident where an HPD employee allegedly felt her breast each are sufficiently severe to constitute a hostile work environment.  (*See* Pl.'s Am. Mem. L. at 4.)  The Court disagrees.

First, plaintiff cannot establish a hostile work environment based on her fight with her coworker in February of 2009 because it did not subjectively alter the conditions of her employment.  After the incident, defendant's disciplinary unit responded promptly and plaintiff

---

[12] In the instant case, analysis of employer liability is unnecessary because plaintiff's allegations do not constitute a hostile work environment.  However, the Court notes that plaintiff has not established that defendant should be held liable for the incidents that plaintiff alleges created a hostile work environment.  *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992) (explaining that the conduct which created the hostile situation should be imputed to the employer" in order to constitute a Title VII violation).  Plaintiff has neither asserted that each discriminatory act was made by a supervisor nor that defendant was negligent in controlling its work place conditions.  *See Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439–440 (2013) (explaining that employer liability must be established through evidence that defendant was negligent in controlling the working conditions or through strict liability for the actions of supervisory employees).

continued to work for defendant in the same position at the same pay. (E-mail from Georges Deetjen to Raymond Powers (March 11, 2009, 16:09 EST) (Doc. No. 68) at Ex. F.) *See Mathirampuzha v. Potter*, 548 F.3d 70, 73, 79 (2d Cir. 2008) (concluding that a physical assault where plaintiff was punched in the shoulder and chest, spit on, and poked in the eye, necessitating eye surgery and leaving plaintiff in a depressed state, was not an adverse employment action in the context of a hostile work environment claim because plaintiff continued to work "in the same position, at the same pay, and with the same responsibilities"). [13]

Similarly, plaintiff cannot establish a hostile work environment based on the lone incident where an HPD employee felt her breast because a reasonable employee would not find the alleged harassment sufficiently hostile or abusive to alter the conditions of her workplace. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58–59 (2d Cir. 2004) (finding that although a supervisor repeatedly demanded sex from an employee, threatened to fire her, made her return early from vacation, and cut her work hours, the incidents of harassment "were few and occurred over a short span of time" and thus "not sufficiently severe to overcome its lack of pervasiveness").

Even when taken together, the alleged incidents are not sufficiently continuous and concerted to constitute a hostile work environment. Plaintiff's allegations consist of isolated incidents occurring in multiple HPD offices with different perpetrators. (*See* Discipl. Memo, Ex. L (Doc. No. 72-12) at 1); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (stating that "[i]solated incidents typically do not rise to the level of a hostile work environment"). Moreover, plaintiff's allegations are not sufficiently concerted or connected to

---

[13] The remaining incidents – the lateral transfer to 701 Euclid Avenue without change in title or salary, the allegedly erroneous AWOL designation, and use of plaintiff's likeness – do not individually "work a transformation of the plaintiff's workplace" and are "not sufficiently severe" to constitute a hostile work environment. *Mormol*, 364 F.3d at 59.

constitute a single continuing Title VII violation such that the Court should look to time-barred incidents. *See Anderson v. City of New York*, 6–cv–5726, 2012 WL 6720694, at *2 (E.D.N.Y. Dec. 27, 2012) (Mauskopf, J.) (holding that plaintiff's allegations of "sporadic, discriminatory actions, taken by different co-workers and supervisors at different [locations] . . . preclude[d] invocation of the continuing violation doctrine" (internal citations omitted)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) ("[I]f an act on day 401 has no relation to the acts between days 1–100, or . . . was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts."). Because plaintiff's allegations are not sufficiently severe, pervasive, continuous, or even discriminatory, plaintiff has failed to establish a hostile work environment claim.

## C. Retaliation

Plaintiff claims that defendant retaliated against her for her EEO activity in 2008 and her SDHR complaint in December of 2009. Plaintiff relies on many of the same incidents in support of this claim: (1) defendant's use of her likeness in the HPD pamphlet, (2) the fight with her coworker over an open window, (3) the April 2009 incident where a coworker allegedly toucher her brast, (4) a transfer to 701 Euclid Avenue, (5) her designation as AWOL, and (6) her termination. (*See* Pl.'s Opp'n at 77–79.)

In order to establish a *prima facie* case of retaliation, plaintiff must show that: (1) she participated in a protected activity known to defendant, (2) was subsequently disadvantaged by a materially adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Ashcroft*, 336 F.3d at 141; *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff's retaliation claims fail because she cannot meet her burden of establishing a *prima facie* case.

### 1. Use of Plaintiff's Likeness in an "About HPD" Pamphlet

Defendant's use of plaintiff's likeness in an "About HPD" pamphlet cannot be considered an adverse employment in the context of retaliation. In order to be considered materially adverse, the action must "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006) (internal citations omitted). Objectively, publishing an employee's picture as part of an advertising pamphlet would not dissuade a reasonable worker from bringing discrimination charges. Indeed, "while the test is an objective one, it is relevant that [plaintiff] [her]self was not deterred from complaining" by filing her SDHR complaint just one month after the "About HPD" pamphlet was published. *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 572 (2d Cir. 2011); (*See* Hand. Dep. at 101:19–20; SDHR Compl. (Doc. No. 1) at 8 (ECF Pagination).)[14]

### 2. Causal Connection

Although many of plaintiff's remaining claims do not appear to be materially adverse, the Court need not address that issue because plaintiff has not established a causal connection between her remaining allegations and her protected activity. Plaintiff has introduced no evidence, direct or circumstantial, of retaliation, nor has plaintiff shown that fellow employees have been treated differently under similar circumstances. Moreover, the uncontroverted evidence fails to demonstrate a temporal relationship between the incidents alleged and any of plaintiff's protected activity. *See Gordon v. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (explaining that causation may be established directly or indirectly, "by showing that the

---

[14] To the extent plaintiff is now asserting this publication violated state privacy law in her papers, (*see* Pl.'s Resp. at 5), the Court declines to exercise pendent jurisdiction over this claim, as it does not serve the "considerations of judicial economy, convenience, and fairness to litigants." *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Likewise the Court will not entertain plaintiff's numerous allegations of state law violations, which are all unrelated to Title VII. (*See, e.g.*, Pl.'s Opp'n at 12, 34, 69 (alleging violations of N.Y. Civil Service Law § 75 and N.Y. Penal Law § 210.15); Pl.'s Am. Mem. L at 25 (alleging violations of N.Y. Penal Law § 485.00 and §130.52).)

protected activity was followed closely by discriminatory treatment"). In the Second Circuit, courts have found that adverse employment actions occurring more than three months after protected activity do not meet this requirement through evidence of timing alone. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 211 (2d Cir. 2006) (finding a causation after two months when defendant explicitly stated he acted as a "result of [plaintiff's] filing of the NYSDHR complaint"); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding no causal connected after five months); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) (finding that the Second Circuit rarely finds causation after the passing of two months).

Plaintiff's EEO complaint was filed in July of 2008 and the alleged incidents of physical altercation, suspension, transfer, and improper touching occurred between February and April of 2009. (*See Hand v. Mustaciulo* (EEO) at 1; Pl.'s Narrative Statement at 3–4; E-mail from Jessica Arizmendi to Eardine Scarsboro, et al. (March 10, 2009, 16:15 EST); Dept. Mem. Mar. 13, 2009 at 1; Pl.'s Narrative Statement at 2; Hand Ltr to Dist. Council 37 date Aug. 4, 2010.) Plaintiff filed her SDHR complaint in December of 2009 and was terminated in October of 2010. (SDHR Compl. at 8 (ECF Pagination); Termination Ltr at 1.) More than 6 months passed between plaintiff's EEO activity and her first alleged adverse employment action and nearly a year passed between plaintiff's SDHR complaint and her termination. This is well above the three month period considered causal in the Second Circuit. *See Ashok*, 289 F. Supp. 2d at 314–15. As such, plaintiff has failed to establish a *prima facie* case of retaliation based on her 2008 EEO activity and 2009 SDHR complaint.

**CONCLUSION**

For the reasons stated herein, defendant's motion for summary judgment is granted in its entirety. Plaintiff's request for relief from all pre-termination administrative decisions is denied. The Clerk of Court shall enter judgment accordingly, mail a copy of this Memorandum and Order and the accompanying judgment to plaintiff *pro se*, and close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 17, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge